UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
J & J SPORTS PRODUCTIONS, INC.,

                Plaintiff,              **REPORT & RECOMMENDATION**
                                                    **18 CV 5110 (DLI)(LB)**

   -against-

CALVIN CLARK, *individually and d/b/a Bedford Hall*, and BEDFORD HILL, LLC, *an unknown business entity d/b/a Bedford Hall*,

                Defendants.
-----------------------------------------------------------------X
**BLOOM, United States Magistrate Judge:**

       Plaintiff J & J Sports Productions, Inc. ("J & J") brings this action against Bedford Hill LLC doing business as Bedford Hall ("Bedford Hall") and Calvin Clark seeking to recover statutory damages, enhanced statutory damages, interest, and costs pursuant the Federal Communications Act of 1934 ("FCA"), codified as amended, 47 U.S.C. §§ 553 and 605. See ECF No. 1, Complaint ("Compl."). J & J alleges that defendants unlawfully received and displayed a closed-circuit televised boxing event in violation of J & J's exclusive licensing rights. Despite proper service of the summons and the complaint, defendants have failed to respond. On December 18, 2018, the Clerk of Court noted entry of default against defendants. ECF No. 8. On February 22, 2019, plaintiff filed a motion for a default judgment. ECF No. 9. The Honorable Dora L. Irizarry referred plaintiff's instant motion to me for a Report and Recommendation in accordance with 28 U.S.C. § 626(b). For the following reasons, it is respectfully recommended that plaintiff's motion for a default judgment should be denied.

## BACKGROUND[1]

Plaintiff J & J is a California corporation with its principal place of business in San Jose, California.[2] Compl. ¶ 6. Defendant Bedford Hall is a commercial establishment located in Brooklyn, New York. Id. ¶ 7. Defendant Clark is identified as the "Principal" and "Owner" of Bedford Hall on its New York Liquor Authority License. Id.

Mayweather Promotions granted J & J the "exclusive nationwide commercial distribution (closed-circuit) rights to Floyd Mayweather, Jr v. Andre Berto WBA/WBC World Welterweight Championship Fight Program" telecast on September 12, 2015 (the "Event"). Id. ¶ 16, Gagliardi Aff. at 9. J & J "expended substantial monies marketing, advertising, promoting, administering, and transmitting" the Event to potential customers. Id. ¶ 18. Pursuant to its exclusive license, J & J then entered into sublicensing agreement with various establishments in the hospitality industry including hotels, racetracks, bars, and restaurants, permitting them to "publicly exhibit" the Event. Compl. ¶¶ 17–18.

J & J charged sublicensees a fee to show the Event depending on the establishment's capacity. See Rate Card. The fee ranged from $2,000 for a maximum capacity of 100 people, to

---

[1] The facts are drawn from the uncontested allegations in plaintiff's Complaint and are taken as true for the purposes of deciding defendants' liability on this default motion. Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc., 109 F.3d 105, 108 (2d Cir. 1997) (deeming all well-pleaded allegations in a complaint admitted on a motion for a default judgment). Where noted, additional facts are drawn from documents that J & J submitted in support of its motion, including the following: an affidavit from J & J's President, Joseph M. Gagliardi, ECF No. 9-2, ("Gagliardi Aff."), which attaches J & J's Closed Circuit Television License Agreement with Mayweather Promotions, ECF No. 9-2, Ex. 1 and a Rate Card, ECF No. 9-2, Ex. 2, and an affidavit from plaintiff's attorney, Joseph P. Loughlin, ECF No. 9-3, ("Loughlin Aff."), which attaches an affidavit from plaintiff's auditor, Osmilda Del Rosario, ECF No. 9-3, ("Del Rosario Aff.").

[2] "Plaintiff has initiated hundreds of cases in this District, and has moved for default judgment in over one hundred of them. The facts of each case, including this one, are virtually identical." J & J Sports Prods., Inc. v. Monte Limar Sports Bar Inc., No. 15 CV 3771, 2017 WL 933079, at *1 (E.D.N.Y. Mar. 8, 2017). The instant case is no exception. Plaintiff's counsel, Joseph P. Loughlin, filed eighteen new J & J cases between September 10–11, 2018 in the Eastern and Southern Districts of New York. Upon a cursory review of these filings, the Court notes that the complaints are nearly identical and if plaintiff moved for default, the memorandums in support of default judgment and the Gagliardi affidavits are also identical. The only variations that the Court noticed between the filings are the names of the particular defendants sued and the amounts requested as a default judgment.

$6,000 for a maximum capacity of more than 300 people. Id. Once J & J authorized a sublicensee to broadcast the event, J & J "provided . . . the electronic decoding equipment and the satellite coordinates necessary to receive the signal, or the establishment's cable or satellite provider would be notified to unscramble the reception of the [Event] for the establishment[.]" Gagliardi Aff. ¶ 11.

Defendants did not obtain the proper authorization from J & J to "publicly exhibit" the Event. Compl. ¶¶ 17, 19. Osmilda Del Rosario ("Del Rosario"), an auditor hired by J & J, visited Bedford Hall on September 12, 2015 around 11:30 p.m. and observed Bedford Hall showing the Event.[3] Id. ¶ 19; see Del Rosario Aff. Del Rosario stated that Bedford Hall did not charge patrons an admission fee or cover charge to enter Bedford Hall. Del Rosario Aff. at 22. She witnessed the Event displayed on six televisions with approximately 100–123 patrons present inside Bedford Hall. Id. at 22–23. J & J alleges that defendants unlawfully intercepted and published the Event without first obtaining the proper sublicense for commercial gain. Compl. ¶¶ 19–20.

**PROCEDURAL HISTORY**

On September 11, 2018, plaintiff commenced this action alleging that defendants violated the FCA.[4] ECF No. 1. On September 24, 2018 and November 12, 2018, plaintiff served defendants Bedford Hall and Clark with the summons and complaint. ECF Nos. 5–6. On December 11, 2018, plaintiff requested a certificate for default and on December 18, 2018, the Clerk of Court noted

---

[3] Del Rosario states that she entered Bedford Hall at 11:29 p.m. and left the premises at 11:40 p.m. Del Rosario Aff. at 22–23. In that eleven-minute window, she claims that she ordered a drink, counted the number of televisions and the number of patrons three times (resulting in head counts of 100, 110, and 123 people), and made detailed descriptions of the establishment's furniture and décor. Although the Court does not opine on the accuracy or validity of Del Rosario's observations, the Court notes that J & J has been criticized in the past for filing questionable affidavits. See J & J Sports Prods., Inc. v. Ferreiras, No. 15 CV 6546, 2018 WL 6168557, at *2, n.20 (E.D.N.Y. Nov. 20, 2018) (citing cases).

[4] A three-year statute of limitations applies to plaintiff's claims. J&J Sports Prods., Inc. v. Nest Rest. & Bar, Inc., No. 17 CV 4107, 2018 WL 4658800, at *1, n.1 (E.D.N.Y. Aug. 7, 2018) ("Although the FCA provides a two-year statute of limitations for cases involving common carriers, 47 U.S.C. § 415(b), Courts in this circuit have adopted the three-year statute of limitations from the Federal Copyright Act, 17 U.S.C. § 507(b), for cases involving piracy of cable broadcasts.") (citing Nat'l Satellite Sports, Inc. v. Time Warner Entm't Co., L.P., 255 F. Supp. 2d 307, 314 (S.D.N.Y. 2003)).

3

defendants' default. ECF Nos. 7–8. On February 22, 2019, plaintiff moved for a default judgment against defendants. ECF No. 9. Plaintiff seeks recovery of statutory damages and enhanced damages of $36,000, plus pre and post-judgment interest, attorney's fees, and costs. Id. at 3; ECF No. 9-1, Plaintiff's Memorandum of Law In Support of Request for Judgment by Default ("Memo"), at 5, 10.

## DISCUSSION

### I.  Legal Standard

Rule 55 of the Federal Rules of Civil Procedure establishes the two-step process for a plaintiff to obtain a default judgment. First, "[w]hen a party against whom judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Second, after a default has been entered against a defendant, and the defendant fails to appear or move to set aside the default under Rule 55(c), the Court may, on a plaintiff's motion, enter a default judgment. Fed. R. Civ. P. 55(b)(2).

In light of the Second Circuit's "oft-stated preference for resolving disputes on the merits," default judgments are "generally disfavored." Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95–96 (2d Cir. 1993). "Accordingly, plaintiff is not entitled to a default judgment as a matter of right simply because a party is in default." Finkel v. Universal Elec. Corp., 970 F. Supp. 2d 108, 118 (E.D.N.Y. 2013) (courts must "supervise default judgments with extreme care to avoid miscarriages of justice") (citing Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993)). On a motion for default judgment, the Court "deems all the well-pleaded allegations in the pleadings to be admitted." Transatlantic Marine Claims Agency, Inc., 109 F.3d at 108 (citation omitted). In determining whether to issue a default judgment, the Court has the

"responsibility to ensure that the factual allegations, accepted as true, provide a proper basis for liability and relief." Rolls-Royce PLC v. Rolls-Royce USA, Inc., 688 F. Supp. 2d 150, 153 (E.D.N.Y. 2010) (citing Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)). In other words, "[a]fter default . . . it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." Id. (quoting Leider v. Ralfe, No. 01 Civ. 3137, 2004 WL 1773330, at *7 (S.D.N.Y. July 30, 2004)).

In evaluating "whether the unchallenged facts constitute a legitimate cause of action," the Court is limited to the four corners of the complaint. Id. (citation omitted); see Friedman v. Sharinn & Lipshie P.C., No. 12 Civ. 3452, 2013 WL 1873302, at *3 (E.D.N.Y. Mar. 28, 2013) (in deciding whether liability has been established on a motion for default judgment, a court must consider "whether the claims were pleaded in the complaint, thereby placing the defendant on notice") (citing FRCP 54(c)), adopted by, 2013 WL 1869924 (E.D.N.Y. May 3, 2013). The Court is not so restricted in determining damages, which may be calculated based on documentary evidence, affidavits, or evidence gleaned from a hearing on damages. See Transatlantic Marine Claims Agency, Inc., 109 F.3d at 111.

## II. Federal Communications Act Liability

Plaintiff asserts claims under 47 U.S.C. §§ 553 and 605. Memo at 3–4. The Court considers each of plaintiff's claims in turn:

### a. 47 U.S.C. § 605

J & J alleges that defendants violated Section 605. Compl. ¶¶ 15–24. The relevant portion of Section 605 provides that "[n]o person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person." 47 U.S.C. §605(a); Joint Stock Co.

5

Channel One Russia Worldwide v. Infomir LLC, 16 CV 1318, 2017 WL 696126, at *8 (S.D.N.Y. Feb. 15, 2017), adopted sub nom., 2017 WL 2988249 (S.D.N.Y. Mar. 27, 2017) (under the Communications Act, radio communications have long been understood to include satellite transmissions) (citation omitted). "In this Circuit, Section 605 has been applied to theft of cable communications that originated as radio or satellite communications." J & J Sports Prods., Inc. v. Johnny's Rest., No. 15 CV 6645, 2016 WL 8254906, at *2 (E.D.N.Y. Dec. 15, 2016), adopted sub nom., 2017 WL 591143 (E.D.N.Y. Feb. 14, 2017) (citing Cmty. Television Sys. Inc. v. Caruso, 284 F.3d 430, 435 (2d Cir. 2002)). Courts have also found defendants to have violated Section 605(a) if "at least part of the [e]vent's transmission was produced by satellite." J & J Sports Prods., Inc. v. Chulitas Enter. Corp., No. 12 Civ. 3177, 2014 WL 917262, at *3 (E.D.N.Y. Mar. 10, 2014) (citation omitted).

J & J's Complaint alleges that defendants violated Section 605 by their "unauthorized interception, reception, publication, exhibition, divulgence, display, and/or exhibition" of the Event and state several times that the Event was unlawfully broadcast or transmitted. Compl. ¶¶ 11, 13, 18, 20–21. However, these allegations, even accepted as true, do not establish a violation of Section 605. Plaintiff fails to allege a necessary element required for a Court to establish liability under Section 605: that the Event was transmitted over satellite or that it originated as a satellite or radio communication.[5] See J & J Sports Prods., Inc. v. Nacipucha, No. 17 Civ. 1186, 2018 WL

---

[5] Although Gagliardi references the "interstate satellite transmission of the [Event]," he does not definitely state whether the Event *originated* as a satellite or radio transmission. Gagliardi Aff. ¶ 11; see also Int'l Cablevision v. Sykes, 75 F.3d 123, 131–33 (2d Cir. 1996) (to state a Section 605 claim a plaintiff need only allege that the communication originated via satellite.).

Furthermore, although Gagliardi does reference satellite transmissions, his Affidavit cannot be considered in the Court's liability analysis as it is not part of the Complaint. J & J Sports Prods., Inc. v. Paucar, 17 CV 5358, 2018 WL 4501057, at *4, n.3 (E.D.N.Y. July 16, 2018), adopted by, 2018 WL 4494874 (E.D.N.Y. Sept. 19, 2018) (declining to consider an affidavit attached to plaintiff J & J's motion for default judgment in the liability analysis); Friedman, 2013 WL 1873302, at *3 (in deciding whether to grant liability on a motion for default judgment, a court must consider whether "the claims were pleaded *in the complaint*, thereby placing the defendant on notice") (emphasis added).

2709222, at *5–6 (E.D.N.Y. May 18, 2018), adopted by, 2018 WL 2709200 (E.D.N.Y. June 5, 2018) (Section 605(a) was not violated where the complaint failed to allege that the event was transmitted over satellite or that it was a satellite communication); cf. Time Warner Cable of New York City v. Allirio, No. 99 Civ. 2765, 2007 WL 1704140, at *2 (E.D.N.Y. June 12, 2007) (finding a violation of Section 605 where "[p]laintiff has stated that it receives the signals for its premium and pay-per-view programming via over-the-air transmissions from orbiting satellites and local radio towers."); Garden City Boxing Club, Inc. v. Focused Enters., Ltd., No. 06 Civ. 4874, 2007 WL 1655647, at *2 (E.D.N.Y. June 6, 2007) ("Because Garden City alleges [in the Complaint] that the Event was conveyed via satellite transmission, it has properly pleaded a claim under § 605(a)[.]").

The Complaint lacks any reference to satellite or radio transmission; as such, the Court may not infer that defendants violated Section 605. Cf. J&J Sports Prods., Inc. v. 291 Bar & Lounge, LLC, 648 F. Supp. 2d 469, 473 (E.D.N.Y. 2009) ("The reference to satellite signals provides a sufficient basis to establish that the Fight originated with a radio transmission such that the defendants' interceptions violated section 605[.]"). Although the Gagliardi Affidavit lists several methods by which someone may unlawfully intercept and broadcast the Event such as the use of a "pancake box" or an "illegal cable drop or splice," Gagliardi Aff. ¶ 10, the Court cannot assume that J & J's transmissions were transmitted by satellite. Nacipucha, 2018 WL 2709222, at *5 ("Plaintiff has not presented any competent summary judgment evidence regarding whether the boxing match was delivered via cable, satellite, or otherwise. The Gagliardi affidavit lists numerous ways in which Plaintiff's programming has been intercepted from either cable or satellite transmissions, without opining as to what actually occurred in this case.") (citing J & J

7

Sports Prods., Inc. v. Evolution Entm't Grp., LLC, No. 13-5178, 2014 WL 3587370, at *2 (E.D. La. July 21, 2014)).

In past cases, J & J has plainly stated that its programming was transmitted via radio or satellite transmission or that electronic decoding equipment and satellite coordinates were necessary to receive the signal of the event. See, e.g., J & J Sports Prods, Inc. v. Taqueria Juarez Rest., Inc., No. 17 CV 4158, 2018 WL 2056181, at *3 (E.D.N.Y. Mar. 16, 2018), adopted by, 2018 WL 2048370 (E.D.N.Y. May 2, 2018); Johnny's Rest., 2016 WL 8254906, at *3 ("Plaintiff alleges that the signal here derived from satellite communications to which Plaintiff had an exclusive license to broadcast or to sublicense."); Chulitas Enter. Corp., 2014 WL 917262, at *3 (J & J's allegation that electronic decoding equipment and satellite coordinates were necessary to receive the signal for the event was "sufficient to form the basis for liability under Section 605").

As the Complaint does not allege that the Event originated as a satellite or radio communication, J & J has not adequately pled that defendants are liable under Section 605. See Paucar, 2018 WL 4501057, at *5 (denying default judgment where plaintiff failed to plead sufficient facts that defendants intercepted or received communications via satellite transmission); Joint Stock Co. Channel One Russia Worldwide, 2017 WL 696126, at *2 ("The statute reaches the unauthorized retransmission of a signal that originated as a satellite transmission, even when it is thereafter received or transmitted over the internet.). As plaintiff's pleading fails to allege that the Event ever traveled via satellite, plaintiff's Count One fails to state a cognizable claim under § 605(a).

    a. **47 U.S.C. § 553**

In the alternative, J & J alleges that defendants violated Section 553. Compl. ¶¶ 25–29. Section 553 provides that "[n]o person shall intercept or receive or assist in intercepting or

receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator[.]" 47 U.S.C. § 553(a)(1); Int'l Cablevision, Inc. v. Sykes, 997 F.2d 998, 1008 (2d Cir. 1993) (put differently, Section 553 prohibits "theft of services offered over a cable system[.]") (citation omitted).

J & J fails to state a claim under Section 553 for similar reasons to why it fails to state a claim under Section 605. J & J's Complaint fails to allege that the Event was broadcast via a cable system. Nacipucha, 2018 WL 2709222, at *8 ("J&J did not actually allege that the Event was a satellite communication, and simultaneously allege, in the alternative, that the Event was a cable communication. Rather, it brought causes of action based on such communications but failed to state the predicate fact necessary for either violation.") (citing J & J Sports Prods., Inc. v. Munguti, No. 06 Civ. 1282, 2007 WL 928479, at *2 (D.N.J. Mar. 27, 2007)). Accordingly, plaintiff has likewise failed to state a claim under Section 553.

### III.    Individual Liability

J & J also fails to establish that Clark should be held liable under Sections 503 or 605. If Bedford Hall was found to be liable, J & J may seek to impose liability on Clark under theories of contributory infringement or vicarious liability. J & J Sports Prods., Inc. v. LX Food Grocery, Inc., No. 15 CV 6505, 2016 WL 6905946, at *2 (E.D.N.Y. Nov. 23, 2016) (quoting Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc., 118 F.3d 955, 971 (2d Cir. 1997)). "Contributory infringement occurs when a defendant authorize[s] the violations." Id. at *2 (citations omitted). "Vicarious liability occurs when a defendant ha[s] a right and ability to supervise that coalesced with an obvious direct financial interest." Id. (internal quotations omitted). Merely reiterating the case law in a boilerplate fashion does not establish a defendant's individual liability. Corbin v. Wilson, No. 10 CV 3156, 2011 WL 4374213, at *3 (E.D.N.Y. Aug. 26, 2011) ("conclusory

9

language that parrots [controlling judicial decisions]" does not constitute a well-pleaded allegation that must be deemed true on a default).

Here, J & J attempts to plead both contributory infringement and vicarious liability theories. J & J generically alleges that Clark is the principal or the owner of Bedford Hall as identified by the New York State Liquor License and that Clark "specifically directed or permitted the employees of Bedford Hall to unlawfully intercept and broadcast" the Event, or that he did so himself. Compl. ¶¶ 7–9, 11. The Complaint does nothing more than regurgitate elements from pertinent judicial decisions. See LX Food Grocery, 2016 WL 6905946, at *3 (plaintiff's "'formulaic recitation of the elements of a cause of action' is insufficient to establish" an individual defendant's liability) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

Although the liquor license may suggest that Clark had the ability to supervise Bedford Hall's operations or enjoy in its profits, it does nothing to establish that Clark had anything to do with the decision to broadcast the Event at Bedford Hall or that Clark had an "obvious and direct financial interest" in exploiting the Event. See, e.g., J&J Sports Prods., Inc. v. 88-18 Tropical Rest. Corp., No. 17 CV 2620, 2018 WL 1701942, at *3–4 (E.D.N.Y. Mar. 30, 2018) ("In the context of unlicensed broadcasting of pay-per-view events, courts in this jurisdiction have held repeatedly that the mere presence of an individual defendant's name on a liquor license is insufficient to establish an 'obvious and direct financial interest.'"); J & J Sports Prods., Inc. v. El Ojo Aqua Corp., No. 13 Civ. 6173, 2014 WL 4700014, at *4 (E.D.N.Y. Aug. 29, 2014), adopted by, LOL (E.D.N.Y. Sept. 19, 2014).

The Del Rosario Affidavit establishes that six television screens at Bedford Hall showed the Event to 100–123 people; however, the Complaint does not include these details nor does it identify any specific actions taken by Clark to establish his liability for the Event's broadcast.

10

Absent well-pled allegations that Clark authorized the violations alleged or had supervisory control and gained additional profit from the Event, J & J has not satisfied its burden to establish that Clark is vicariously liable or contributorily infringed its content under either Sections 553 or 605.

Although the Court recognizes that it may be difficult for plaintiff to attribute ownership and control to an individual defendant in a default, plaintiff must nonetheless provide an adequate basis for the Court to make such a finding. Courts have routinely criticized plaintiff for failing to adequately plead individual liability. Ferreiras, 2018 WL 6168557, at *11 (citing cases); J & J Sports Prods., Inc. v. Nest Rest. & Bar, No. 17 CV 2194, 2018 WL 4921657, at *15, n.1 (E.D.N.Y. July 17, 2018), adopted by, 2018 WL 4356724 (E.D.N.Y. Sept. 12, 2018) ("If Plaintiff seeks to assess individual liability against allegedly responsible individuals in future similar cases, it will need to do additional investigation and amplify its pleadings."); 291 Bar & Lounge, Inc., 648 F. Supp. 2d 469, 473 (E.D.N.Y. 2009) ("To the extent that J&J wishes to assert liability against an individual in the future, it should make adequately detailed allegations in the complaint, beyond the conclusory and vague charge of mere ownership of the offending entity.").

Accordingly, it is respectfully recommended that plaintiff's motion for a default judgment against Clark should be denied. See Paucar, 2018 WL 4501057, at *6–8 (denying motion for default judgment as to an individual defendant when defendant corporation was not held liable under Sections 503 or 605), Nacipucha, 2018 WL 2709222, at *9 (same); see also Taqueria Juarez Rest., Inc., 2018 WL 2056181, at *7 (denying motion for default judgment as to an individual defendant when defendant corporation was held liable under Section 605); J & J Sports Prods., Inc. v. Right Brain Rest., Inc., No. 17 CV 1191, 2017 WL 4535928, at *6 (E.D.N.Y. Oct. 10, 2017) (same).

## CONCLUSION

As plaintiff's Complaint does not establish defendants' liability under either Sections 553 or 605, the Court respectfully recommends that J & J's motion for a default judgment should be denied. Plaintiff's counsel shall serve a copy of this Report and Recommendation on defendants at their last known addresses and file proof of service forthwith.

## FILING OF OBJECTIONS TO REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen days from service of this Report to file written objections. See Fed. R. Civ. P. 6. Such objections shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the fourteen-day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital Dist. Physicians' Health Plan, Inc., 293 F.3d 42 (2d Cir. 2002); Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140 (1985).

SO ORDERED.

/S/
LOIS BLOOM
United States Magistrate Judge

Dated: March 22, 2019
　　　　Brooklyn, New York